IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| KEON LIPSCOMB, R25793, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 24-cv-1760-DWD |
| | ) | |
| ZACKARY CONNOR, | ) | |
| | ) | |
| Defendant. | ) | |

# MEMORANDUM AND ORDER

**DUGAN, District Judge:**

Plaintiff Keon Lipscomb brings this action pursuant to 42 U.S.C. § 1983 for alleged deprivations of his constitutional rights while at Menard Correctional Center (Menard). Plaintiff alleges that Defendant Connor performed a strip search in an unnecessary and harassing manner. Connor has moved for summary judgment on Plaintiff's alleged failure to exhaust his administrative remedies (Doc. 26), and Plaintiff has responded (Doc. 27). As explained in this Order, there is a material dispute between Connor and Plaintiff about the availability of the grievance process, so Connor will have the option of requesting an evidentiary hearing.

### BACKGROUND

Plaintiff signed his original complaint on July 22, 2024. (Doc. 1 at 6) Upon initial review, the Court allowed two claims to proceed:

Claim 1: Fourth or Eighth Amendment claim against Defendant Connor for the July 18, 2024, strip search; and

>Claim 2:   Intentional infliction of emotional distress claim against Defendant Connor for the strip search.

(Doc. 12 at 3). Plaintiff's complaint was premised on the assertion that Connor performed a strip search in an improper and harassing manner by requiring Plaintiff to repeatedly lift and manipulate his genitals, by making a comment about rape while viewing Plaintiff's anus, and by making comments and gestures that suggested he was aroused by the encounter. (Doc. 1 at 2-4).

In the motion for summary judgment, Defendant Connor argues that Plaintiff had access to the grievance process and understood how to use it, but that he simply did not try to use it for this claim. He further argues that because the basis for the claim occurred on July 18, 2024, and the lawsuit was filed on July 22, 2024, it was impossible that Plaintiff could have completed the grievance process in such a short time. (Doc. 26). Plaintiff counters that he was on suicide or crisis watch from February 8, 2024, to August 27, 2024, during which time he was not afforded pens or paper. He claims that he asked staff repeatedly for help drafting grievances, but he was not afforded any help. With these barriers he argues the grievance process was unavailable. Alternatively, he argues that because he faced an imminent danger, he was not required to wait for a resolution from the grievance process before filing this lawsuit.

FINDINGS OF FACT

The Defendants submitted a grievance log from the Administrative Review Board that reflects grievances processed at the ARB in January of 2024 and again in September of 2024. (Doc. 26-1 at 1). They also submitted grievance records from the prison that

demonstrate Plaintiff filed handwritten grievances at the prison level on February 6, 2024, and March 7, 2024. (Doc. 26-1 at 10, 14). Finally, an excel chart shows a number of grievances submitted at Menard throughout January of 2024. (Doc. 26-2 at 1-3).

Plaintiff submitted an assortment of records, including an excerpt of his cumulative counseling summary. (Doc. 27 at 7-10). There are multiple entries in the cumulative counseling summary that indicate he asked correctional counselors during gallery tours for assistance drafting grievances while he was on crisis watch and could not have a paper or pen. In response to a March 7, 2024, query, it was noted that a law library clerk went to Plaintiff's cell, helped him write a grievance, and submitted the grievance. A grievance was noted as received on March 8, 2024. (Doc. 27 at 7). By contrast, there were other occasions where he appeared to ask for help drafting a grievance, but where there is no notation that he got assistance. It is also noteworthy that there appear to be many grievances pending during the timeframe of the counseling log from March of 2024 thru July 8, 2024. The log reflects that Plaintiff would write the grievance office for status updates on grievances, and that he would get responses. In addition to the cumulative counseling log, Plaintiff tendered an affidavit wherein he averred that he asked for help to draft a grievance about the events of this complaint, but he claimed he was denied assistance. (Doc. 27 at 6). Plaintiff also submitted a handful of mental health progress notes. On July 20, 2024, Plaintiff reported to a mental health worker that he was not doing well because all of his "stuff" was taken from him due to a crisis watch. (Doc. 27 at 23). Two April 2024 mental health notes mentioned Plaintiff's desire to have assistance drafting grievances. (Doc. 27 at 13, 17).

## CONCLUSIONS OF LAW

A. Legal Standards

Summary judgment is proper if there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a). A genuine issue of material fact exists when "the evidence is such that a reasonable [factfinder] could [find] for the nonmoving part." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The Prison Litigation Reform Act (PLRA) provides that a prisoner may not bring a lawsuit about prison conditions unless and until he has exhausted all available administrative remedies. 42 U.S.C. § 1997e(a); *Pavey v. Conley*, 544 F.3d 739, 740 (7th Cir. 2008). "The exhaustion requirement is an affirmative defense, which the defendants bear the burden of proving." *Pavey v. Conley*, 663 F.3d 899, 903 (7th Cir. 2011).

Historically speaking, courts in the Seventh Circuit have resolved the issue of exhaustion of administrative remedies on paper, or after an evidentiary hearing if there is a genuine dispute of fact. *See e.g.*, *Smallwood v. Williams*, 59 F.4th 306, 315 (7th Cir. 2023) ("In this circuit, we have determined that disputed factual questions that bear on exhaustion can be resolved by a district court judge (rather than a jury) as a preliminary matter, in what is known as a *Pavey* hearing."). If there are contested factual issues about exhaustion, a district court holds a hearing, and the judge resolves disputes on facts, including witness credibility. However, in *Perttu v. Richards*, 145 S.Ct. 1793, 1800 (June 18, 2025), the Supreme Court held that an inmate is entitled "to a jury trial on PLRA exhaustion when that issue is intertwined with the merits of a claim that falls under the Seventh Amendment." In *Perttu* an inmate alleged that a guard sexually abused him,

and that the same guard destroyed his grievances and threatened to kill him if he filed additional grievances. After an evidentiary hearing, a judge concluded that the inmate's witnesses were not credible on the issue of destroyed grievances, and thus the case was dismissed for failure to exhaust. *Id.* at 1799. The *Perttu* Court held that because facts pertaining to exhaustion were also facts that went to the merits of the claim, the exhaustion issue should have been resolved by a jury, and not a judge. The *Perttu* Court did not extend the right to a jury trial on exhaustion beyond the bounds of exhaustion issues intertwined with the merits of the substantive claims.

For a prisoner to properly exhaust his administrative remedies, the prisoner must "file complaints and appeals in the place, and at the time, the prison's administrative rules require." *Pozo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir. 2002). "[A] prisoner who does not properly take each step within the administrative process has failed to exhaust state remedies." *Id.* at 1024. However, "if prison employees do not respond to a properly filed grievance or otherwise use affirmative misconduct to prevent a prisoner from exhausting," then the grievance procedure becomes unavailable. *Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006) (finding that an inmate who placed a timely ARB appeal in his chuckhole for mailing, but whose grievance was apparently lost, did all that he could to follow exhaustion procedures).

As an inmate in the Illinois Department of Corrections (IDOC), Plaintiff must follow the grievance process outlined in the Illinois Administrative Code. 20 ILL. ADMIN. CODE § 504.800, et seq. (2017). Under IDOC's procedure, an inmate initiates a grievance with his counselor within 60 days of an event, and he may then submit his grievance to a

grievance officer at his facility, and to the CAO at his facility. The Grievance Officer shall whenever reasonably feasible, report findings and recommendations to the CAO within two months after receipt of the grievance. 20 ILL. ADMIN. CODE 504.830(e). If an inmate is unsatisfied with the outcome at the facility he must appeal to the ARB within 30 days. 20 ILL. ADMIN. CODE § 504.850(a). An inmate may also submit a grievance as an emergency to the CAO if there is a substantial risk of imminent persona injury or other serious irreparable harm. 20 ILL. ADMIN CODE § 504.840(a). The CAO may either deem the grievance an emergency, or the CAO may deem it a non-emergency and return it to the offender for processing via the normal channels. *Id.*

 B. Analysis

  Defendant Connor argues that Plaintiff had access to the grievance procedure and knew how to use it, by pointing to other grievances lodged in 2023 and 2024. He argues that because the underlying events occurred on July 18, and Plaintiff lodged his lawsuit on July 23, it is simply impossible that he tried to exhaust grievances in this five day timeframe. Plaintiff counters that he tried, but was not allowed to file a grievance in July of 2024 because he was on crisis watch and was not allowed pen or paper.

  The grievance log that Connor provides from the prison in an excel spreadsheet only reflects grievances filed in January of 2024, before Plaintiff states he went on crisis and had trouble lodging grievances. However, there is also evidence that he tendered a grievance in March of 2024 while he was on crisis watch status. This instance is more thoroughly described by reference to Plaintiff's cumulative counseling summary, which demonstrates that on March 7, 2024, he asked his counselor for help filing a grievance

because he did not have access to writing supplies, and the counseling log shows that a law library worker was sent to assist Plaintiff. This evidence suggests that he had some access to the grievance procedure, but it does not conclusively demonstrate that he had access in July of 2024, after the incident with Connor.

Plaintiff contends that in July of 2024 he asked for help to draft a grievance, but he was refused assistance. His counseling summary reflects other occasions from March to early July of 2024 when he asked for grievance assistance, without any indication that he ever received assistance. However, neither side submitted the cumulative counseling summary for mid-July 2024 thru August of 2024. This portion of the cumulative counseling summary may give better information about what Plaintiff did to attempt to exhaust his claim about Connor in the five days before filing this lawsuit. A mental health summary from just two days after the incident with Connor indicated that Plaintiff was unhappy because all of his belongings had been taken. Other mental health summaries also indicated that over time while on crisis watch status, Plaintiff reported complaints about his ability to file grievances. Against this backdrop, it cannot be said that Defendants have carried their burden to show the grievance process was available between July 18, 2024 and July 23, 2024, when this suit was filed. The Defendants have demonstrated on a general level that there was a grievance process, and that Plaintiff had accessed it in the past, but they do not have any evidence that shows he had access in late July of 2024 when the incident with Connor arose. By contrast, Plaintiff has introduced evidence that tends to suggest he had intermittent problems accessing the grievance

process. This dispute in the evidence is critical to the exhaustion determination in this case, so the Defendant Connor's Motion cannot be granted.

Two other issues are worth mention. First, Plaintiff argues that because he was in imminent danger when he filed this case, he should be excused from the exhaustion requirement altogether. Plaintiff cites *Fletcher v. Menard Corr. Ctr.*, 623 F.3d 1171 (7th Cir. 2010) for the proposition that he was not required to exhaust remedies before suing if he faced imminent danger. Plaintiff is correct that in the *Fletcher* case, the Seventh Circuit suggested there could conceivably be a situation where an inmate faced such immediate danger that no grievance process could afford relief, but the *Fletcher* Court also concluded that an inmate with access to a grievance process that contained an emergency processing feature, did not face such imminence when he sued just two days after lodging an emergency grievance. Here, Plaintiff does not contend that he attempted to file any grievance at all, and his factual allegations at the time of filing the complaint did not suggest an ongoing threat from the sole Defendant, Defendant Connor. Thus, he is not like the hypothetical inmate discussed in *Fletcher* who may have faced an imminent death threat or other immediate danger. This lawsuit is about a single strip search with Defendant Connor, and the facts do not suggest imminence that would render the grievance process immediately inadequate or useless.

Second, the Court does not find that this case invokes the Supreme Court's recent holding in *Perttu* because the underlying claims here sound under the Fourth or Eighth Amendments concerning conduct during a strip search by Defendant Connor, whereas Plaintiff's ability to access the grievance process is a distinct issue that Plaintiff

experienced in the cellhouse that he presented to his counselors, and that he does not attribute in any way to Defendant Connor. The availability of the grievance process will likely turn on testimony of Plaintiff, and a counselor or grievance personnel. There is no indication any testimony or evidence concerning Defendant Connor's alleged actions would be necessary to resolve the issue of the availability of the grievance process. The Court does not find that resolving issues of this nature will in any way be intertwined with the merits of the Fourth or Eighth Amendment claims. Accordingly, the Court will not defer this exhaustion issue to trial, and if the Defendant wishes to seek an evidentiary hearing, the issue can be resolved in the normal fashion under *Pavey* procedures used in the Seventh Circuit.

### DISPOSITION

Defendant Connor's Motion for Summary Judgment on the issue of exhaustion (Doc. 26) is **DENIED**. Defendant must file a notice within fourteen days (14) of this Order either withdrawing the affirmative defense of exhaustion or asking for a *Pavey* hearing.

**IT IS SO ORDERED.**

Dated: July 28, 2025                    /s *David W. Dugan*
                                        _____
                                        DAVID W. DUGAN
                                        United States District Judge

### NOTICE TO PLAINTIFF

This Order is an initial decision that you have presented enough evidence to refute the defendant(s) arguments about the exhaustion of administrative remedies for your claims in this lawsuit. The defendant(s) now have the choice to withdraw their

exhaustion argument, or to ask for a hearing to give more evidence about this issue. If the defendants withdraw the defense, you will get a scheduling order for next steps on the merits of your claims. If the defendants ask for a hearing, you will get an order that will explain next steps to prepare for the hearing. Any hearing will be limited strictly to the 'dispute(s) of material fact' specifically identified in this Order. You will not need to present evidence on anything other than what is specifically identified. If a hearing is scheduled, you will be allowed to present evidence and testimony on your own behalf. Details about a future hearing will be provided by future order if one is scheduled. You do not need to do anything now. The Defendants have 14 days to file a motion about what they want to do. You will get a copy of that motion, and you will get further instructions once the Defendants have filed their motion. Please be aware that there can be delays in the mailing of copies, so you should wait at least 30 days before asking for the status of this matter.