**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ILLINOIS**

| | | |
|---|---|---|
| **KEON LIPSCOMB, R25793,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **Case No. 24-cv-1760-DWD** |
| | ) | |
| **ZACKARY CONNOR,** | ) | |
| | ) | |
| **Defendant.** | ) | |

# <u>MEMORANDUM AND ORDER</u>

**DUGAN, District Judge:**

Plaintiff Keon Lipscomb brings this action pursuant to 42 U.S.C. § 1983 for alleged deprivations of his constitutional rights while at Menard Correctional Center (Menard). Plaintiff alleges that Defendant Connor performed a strip search in an unnecessary and harassing manner. Connor moved for summary judgment on Plaintiff's alleged failure to exhaust his administrative remedies (Doc. 26), Plaintiff has responded (Doc. 27), the Court denied the motion on paper (Doc. 28), and on October 9, 2025, the Court conducted an evidentiary hearing on the issue of exhaustion. For reasons explained in this Order, the Court finds that Plaintiff failed to exhaust his administrative remedies, so this case must be dismissed without prejudice.

## BACKGROUND

Plaintiff signed his original complaint on July 22, 2024, and it was received by the Court on July 23, 2024. (Doc. 1 at 6) Upon initial review, the Court allowed two claims to proceed:

Claim 1:    Fourth or Eighth Amendment claim against Defendant Connor for the July 18, 2024, strip search; and

Claim 2:    Intentional infliction of emotional distress claim against Defendant Connor for the strip search.

(Doc. 12 at 3).  Plaintiff's complaint was premised on the assertion that Connor performed a strip search in an improper and harassing manner by requiring Plaintiff to repeatedly lift and manipulate his genitals, by making a comment about rape while viewing Plaintiff's anus, and by making comments and gestures that suggested he was aroused by the encounter.  (Doc. 1 at 2-4).

In the motion for summary judgment, Defendant Connor argued that Plaintiff had access to the grievance process and understood how to use it, but that he simply did not try to use it for this claim.  He further argued that because the basis for the claim occurred on July 18, 2024, and the lawsuit was filed on July 22, 2024, it was impossible that Plaintiff could have completed the grievance process in such a short time.  (Doc. 26).  Plaintiff countered that he was on suicide or crisis watch from February 8, 2024, to August 27, 2024, during which time he was not afforded pens or paper.  He claimed that he asked staff repeatedly for help drafting grievances, but he was not afforded any help.  In support of his response, he submitted his cumulative counseling summary, which contained notes indicating he asked for help drafting a grievance in March of 2024 and received help.  The counseling summary also showed that he asked for help writing grievances once in April of 2024 and twice in May of 2024.  (Doc. 27 at 9).  He also included mental health progress notes that revealed he asked mental health staff for assistance

with grievances repeatedly in April of 2024 and again in June of 2024. With these barriers he argues the grievance process was unavailable.

The Court determined that the parties' paper filings on the issue of exhaustion revealed a genuine dispute about the availability of the grievance process, so it scheduled an evidentiary hearing. (Doc. 28).

FINDINGS OF FACT

At the hearing, Plaintiff clearly and succinctly described the requirements of the IDOC grievance process. He explained that when an individual is on crisis watch, as he was from July 18-23, 2024, they are not allowed to possess pens or paper. Thus, they must ask staff for assistance. Plaintiff testified that he repeatedly asked his counselor and mental health staff for assistance drafting grievances, but he believed that they eventually stopped recording it in their visit notes because he made requests so frequently. Because he was not receiving access to the grievance process, Plaintiff utilized the backside of his incoming mail and a smuggled pen to draft the complaint for this matter. He testified that while on crisis watch mail was placed in the cell bars, and not in the personal property boxes. When he had mail in his bars, he would retrieve it and use it as writing paper. He used mail to pen his complaint. He stated that he gave the complaint to an officer on one of the three shifts for mailing, or possibly that he gave it to an inmate to give to staff. Plaintiff believed that at some point staff and law library clerks were directed to stop helping him with grievances. Plaintiff did not attempt to submit a grievance on his mail because it would have been rejected.

Jeffrey Olson, a correctional counselor from Menard Correctional Center, also testified.  Olson indicated that from March of 2024-July 1, 2025, and as of the date of the hearing (October 9, 2025), he was on temporary assignment as a grievance officer.  He described the grievance process, and the process for inmates on crisis watch status, similar to Plaintiff.  Inmates are required to use actual grievance forms to submit grievances, and not just plain sheets of paper.  Olson added that when an inmate on crisis watch wishes to write a grievance, they are to notify the correctional officer, who then notifies the grievance supervisor so that assistance can be delegated for someone to go and pen the grievance for the inmate.  The crisis watch grievance standards are in place because crisis watch inmates are not allowed to possess any items in their cell that could be used for self-harm, such as a segregation pen or paper.  Olson testified that inmates are not allowed to have mail in their cells, and that their mail is collected in their personal property box for eventual release when the inmate leaves crisis status.  Olson further testified that Plaintiff's cumulative counseling summary showed requests for assistance writing grievances in March, April and May of 2024.  By contrast, the summary did not show any requests for help drafting grievances in July of 2024.[1]

---

[1] In response to summary judgment Plaintiff submitted an excerpt of his counseling summary that covered February 15, 2024-July 8, 2024.  (Doc. 27 at 7-10).  Olson testified to the contents of the counseling summary between July 18, 2024, and July 23, 2024, but counsel never formally tendered that portion of the counseling summary prior to the hearing.  Counsel should take care in future matters to submit documents that will be utilized in testimony.  The Court appreciates that after the hearing, Counsel supplemented the record with the counseling summary.  (Doc. 36).

## CONCLUSIONS OF LAW

A. Legal Standards

Summary judgment is proper if there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a). A genuine issue of material fact exists when "the evidence is such that a reasonable [factfinder] could [find] for the nonmoving part." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The Prison Litigation Reform Act (PLRA) provides that a prisoner may not bring a lawsuit about prison conditions unless and until he has exhausted all available administrative remedies. 42 U.S.C. § 1997e(a); *Pavey v. Conley*, 544 F.3d 739, 740 (7th Cir. 2008). "The exhaustion requirement is an affirmative defense, which the defendants bear the burden of proving." *Pavey v. Conley*, 663 F.3d 899, 903 (7th Cir. 2011).

Historically speaking, courts in the Seventh Circuit have resolved the issue of exhaustion of administrative remedies on paper, or after an evidentiary hearing if there is a genuine dispute of fact. *See e.g.*, *Smallwood v. Williams*, 59 F.4th 306, 315 (7th Cir. 2023) ("In this circuit, we have determined that disputed factual questions that bear on exhaustion can be resolved by a district court judge (rather than a jury) as a preliminary matter, in what is known as a *Pavey* hearing."). In *Perttu v. Richards*, 145 S.Ct. 1793, 1800 (June 18, 2025), the Supreme Court held that an inmate is entitled "to a jury trial on PLRA exhaustion when that issue is intertwined with the merits of a claim that falls under the Seventh Amendment."[2]

---

[2] In this case, the Court determined that *Perttu* was not invoked because there was no intertwinement between the exhaustion issues and the merits of the underlying claim. (Doc. 28).

For a prisoner to properly exhaust his administrative remedies, the prisoner must "file complaints and appeals in the place, and at the time, the prison's administrative rules require." *Pozo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir. 2002). "[A] prisoner who does not properly take each step within the administrative process has failed to exhaust state remedies." *Id.* at 1024. However, "if prison employees do not respond to a properly filed grievance or otherwise use affirmative misconduct to prevent a prisoner from exhausting," then the grievance procedure becomes unavailable. *Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006) (finding that an inmate who placed a timely ARB appeal in his chuckhole for mailing, but whose grievance was apparently lost, did all that he could to follow exhaustion procedures). If a prison does not allow an inmate to access the grievance process, then the process is unavailable. *Gooch v. Young*, 24 F.4th 624, 628 (7th Cir. 2022) (finding that an inmate encountered unavailability because the prison refused to provide him with a grievance form).

As an inmate in the Illinois Department of Corrections (IDOC), Plaintiff must follow the grievance process outlined in the Illinois Administrative Code. 20 ILL. ADMIN. CODE § 504.800, et seq. (2017). Under IDOC's procedure, an inmate initiates a grievance with his counselor within 60 days of an event, and he may then submit his grievance to a grievance officer at his facility, and to the CAO at his facility. The Grievance Officer shall whenever reasonably feasible, report findings and recommendations to the CAO within two months after receipt of the grievance. 20 ILL. ADMIN. CODE 504.830(e). If an inmate is unsatisfied with the outcome at the facility he must appeal to the ARB within 30 days. 20 ILL. ADMIN. CODE § 504.850(a). An inmate may also submit a grievance as an

emergency to the CAO if there is a substantial risk of imminent persona injury or other serious irreparable harm. 20 ILL. ADMIN CODE § 504.840(a). The CAO may either deem the grievance an emergency, or the CAO may deem it a non-emergency and return it to the offender for processing via the normal channels. *Id.*

B. Analysis

Ultimately, this case turns narrowly on witness credibility. Plaintiff and Olson testified consistently about many aspects of the grievance process, agreeing that inmates on crisis watch cannot possess pens or paper and that they must request staff assistance to draft a grievance. They agreed that the evidence showed Plaintiff making requests for grievance drafting assistance in March, April and May of 2024, and that his requests were logged in the cumulative counseling summary. As for the relevant period from July 18, 2024, through July 23, 2024, Olson testified that the cumulative counseling summary did not reflect any requests to draft a grievance while Plaintiff testified that the requests simply were not captured in the notes because he made them with such frequency that staff stopped bothering to make note of it. Plaintiff does not have any documentary support for this particular assertion, and Olson credibly testified that he did not know of any reason why a counselor would fail to note that an inmate asked for help filing a grievance. Plaintiff's testimony further diverged from Olson in so much as he claimed that he possessed a contraband pen and that he used the pen to write the complaint in this case. While Olson and Plaintiff both agree that Plaintiff could not have written a grievance on plain paper, Plaintiff did not have a plausible explanation for how he came to possess a pen and paper.

Furthermore, Plaintiff was not able to clearly describe how it is that he took his complaint once he had drafted it and got it filed with the Court. When first asked how he submitted his complaint for filing, Plaintiff said that he probably submitted it to an officer or a fellow inmate. He explained that on each of the three shifts, the officers had designated roles, and their willingness to play their roles may have factored into his ability to give his papers to one person versus another for filing. When pressed specifically on how he transmitted the papers for this case, Plaintiff stated that he gave them to an officer but said he did not know who specifically he gave them to. Ultimately, the Court does not find this series of events convincing. It seems unlikely that if crisis watch inmates could not possess pen or paper, then a guard would just willingly accept a handwritten pleading for transmission to the court because the pleading itself would have been contraband if the inmate tendering it was not supposed to have pen or paper. The Court also was troubled by Plaintiff's lack of ability to describe who specifically agreed to collect his complaint for filing.

It is worth mention that Plaintiff is currently pursuing more than one case in this District, and that in July of 2025 a very similar fact pattern was considered by Chief District Judge Nancy J. Rosenstengel. *Lipscomb v. Blake, et al.* Case No. 24-cv-1233-NJR (S.D. Ill. 2024). In that case, Plaintiff was found credible on the unavailability of the grievance process, but the case is easily distinguishable. *Id.* (Doc. 39, July 22, 2025). The facts surrounding that case arose in late March of 2024, and the complaint was filed in early May of 2024. The cumulative counseling summaries and the mental health progress notes that Plaintiff submitted in that case and in the present case before the undersigned

clearly and unequivocally showed that between March of 2024 and May of 2024, Plaintiff was regularly seeking assistance from staff to draft grievances. By contrast, the present case concerns July of 2024, a time when none of the records demonstrate that Plaintiff was seeking grievance drafting assistance. Therefore, the undersigned finds that the two cases are easily distinguishable, rely on unique facts, and the divergent findings are not at odds with one another.

Based on the foregoing analysis, the Court finds that Defendant Connor has satisfactorily established that Plaintiff was aware of the grievance process, the process was available during the relevant time, and Plaintiff simply failed to exhaust his administrative remedies prior to filing this suit.

## DISPOSITION

Plaintiff's Complaint (Doc. 1) is now **DISMISSED** without prejudice because he failed to exhaust his administrative remedies. The Clerk of Court shall enter judgment and **CLOSE** this case.

**IT IS SO ORDERED.**

Dated: November 18, 2025                    /s/ *David W. Dugan*

_____
DAVID W. DUGAN
United States District Judge